# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT ASA GORDON, et al.** <br><br> Plaintiffs, <br><br> v. <br><br> **KAREN L. HAAS, Clerk of the U.S. House of Representatives,** <br><br> Defendant. | Civil Action 11-0003 (RCL) |

## MEMORANDUM OPINION

Plaintiffs Robert Asa Gordon and Thelma Tharpe, proceeding *pro se*,[1] filed this action on January 3, 2011, seeking to enjoin the Clerk of the U.S. House of Representatives[2] ("the Clerk") from recognizing elected members from the states of Arkansas, Georgia, Louisiana, Tennessee, and Texas (collectively "the five states") during the January 5, 2011 commencement of the 112th Congress. Morgan Moss and Edward Scott, also proceeding *pro se,* subsequently intervened as

---

[1] Plaintiffs purport to bring this action on behalf of themselves and other "registered voters and Presidential Electors of states subject to the impact of the diminishment of their votes." Compl. at 6, ¶ 17. However, because they did not file a motion for class certification within 90 days of filing the complaint as required by Local Civil Rule 23.1(b), they are not able to proceed as representatives of a class. *Gordon v. Biden*, 606 F. Supp. 2d 11, 12 n.1 (D.D.C. 2009), *aff'd per curiam*, No. 09-5142, 2010 WL 606684 (D.C. Cir. Feb. 1, 2010). Even if plaintiffs had filed a motion for class certification, the Court would have denied it because *pro se* litigants cannot serve as representatives of a class. *See id.* at 12 n.1 (citing 28 U.S.C. § 1654; *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664-65 (9th Cir. 2008); *Blue v. Defense Logistics Agency*, 181 Fed. App'x 272, 275 (3d Cir. 2006); *Ziegler v. Michigan*, 90 Fed. App'x 808, 810 (6th Cir. 2004); *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000); *Martin v. Middendorf*, 420 F. Supp. 779, 780 (D.D.C. 1976))

[2] Pursuant to Federal Rule of Civil Procedure 25(3)(d), House of Representatives Clerk Karen L. Haas is substituted for former clerk Loraine C. Miller. Haas was elected Clerk of the House for the 112th Congress on January 5, 2011, see 157 Cong. Rec. H6 (daily ed. Jan. 5, 2001), thereby succeeding Miller.

co-plaintiffs, adopting the complaint in toto. Plaintiffs allege that the five states' allocation of electoral votes to the presidential candidate who receives the most votes (a.k.a. the "winner-take-all" system) violates their constitutional rights, including their right to vote, because no state or federal statute authorizes the winner-take-all system in those states.[3] To remedy this violation, plainitffs argue, the Clerk should reduce the number of elected representatives allocated to the five states, in accordance with Section 2 of the Fourteenth Amendment, which provides for such a reduction when states deny or abridge citizens' right to vote. *See* U.S. CONST. amend. XIV, § 2, *amended by* U.S. CONST. amend. XIX, XVI. In addition to an injunction, plaintiffs seek a declaratory judgment that the five states and all other states that do authorize the winner-take-all system by statute must allocate their electors proportionally, in accordance with the "popular vote split." Compl. at 4, ¶ 10. Plaintiffs are not suing any of the five states.[4]

On the same day plaintiffs filed their complaint, they sought a temporary restraining order against the Clerk [Dkt. # 3], which was denied on January 4, 2011 [Dkt. # 11]. The 112th

---

[3] The U.S. Constitution obligates states to "appoint . . . Electors." U.S. CONST. art. II § 1, cl. 2. In fulfilling this duty, forty-eight of the 50 states implement the winner-take-all approach. Only Maine and Nebraska allocate their electoral votes on a proportional basis, as set forth in state statutes. *See* ME. REV. STAT. Ann tit 21 § 805 (2009); NEB. REV. STAT. § 32-714 (2010). States that have not enacted statutes obligating their electors to vote in a particular manner are considered "unbound." Currently, 24 states are unbound, *see* National Archives and Records Administration, *U.S. Electoral College, What is the Electoral College?: State Laws and Requirements*, http://www.archives.gov/federal-register/electoral-college/laws.html, and plaintiffs seek to enjoin the Clerk from recognizing elected representatives from only five of these states, which the plaintiffs describe as the "unbounded Southern states." Compl. at 5, ¶ 14.

[4] Plaintiffs also assert, in passing, a claim under 42 U.S.C. § 1983. Section 1983 creates a private cause of action against a "person" who violates an individual's constitutional rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . or the District of Columbia . . . ." 42 U.S.C. § 1983. Because plaintiffs have named no state officials, a section 1983 claim cannot lie.

Congress commenced at noon on January 5, 2011, *see* Pub. L. No. 111-289 (Nov. 30, 2010) (appointing Jan. 5, 2011, as the day for the 112th Congress to convene). Currently before the Court is the Clerk's motion to dismiss the complaint [Dkt. # 9].[5] Upon consideration of the parties' motions, the oppositions thereto, and the record of this case, the Court finds that the Clerk's motion to dismiss should be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Gordon identifies himself as the Founder and Director of the Douglass Institute of Government, a registered voter in the District of Columbia, a presidential elector, and the Chair of the D.C. Statehood Green Party Electoral College Task Force. Compl. at 2, ¶ 2.[6] Plaintiff Tharpe is a registered voter of the Democratic Party in Georgia. *Id.* at 2, ¶ 3. The complaint does not state that Gordon and Tharpe voted in the 2010 elections. Plaintiffs Moss and Scott, who identify as African American, Mot. to Intervene at 1, are registered to vote in Louisiana and voted in the 2010 elections. *Id.* at 3.

Plaintiffs contend that the Clerk is required to refrain from recognizing members of Congress from the five states. They base their claims on section 2 of the Fourteenth Amendment, which imposes a member-reduction penalty on states that deny U.S. citizens the right to vote in presidential elections. Section 2 provides that where "the right to vote at any election for the choice of electors for President and Vice President of the United States . . . is denied" to any male

---

[5] Plaintiffs and intervenors also filed motions for summary judgment [Dkt. ## 16, 21]. Upon motion by the defendants [Dkt. # 22], the Court held these motion in abeyance pending judgment on this defendant's motion.

[6] In its review of defendant's motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)).

citizen over the age of 21, or "in any way abridged, except for participation in rebellion, or other crime," the basis of the offending state's representation "shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such state." U.S. CONST. amend. XIV, § 2, *amended by* U.S. CONST. amend. XIX, XVI; Compl. at 5, ¶ 12. Section 2's language is incorporated nearly verbatim into 2 U.S.C. § 6. *See* 2 U.S.C. § 6 (2006); *see generally* George David Zuckerman, *A Consideration of the History and Present Status of Section 2 of the Fourteenth Amendment*, 30 FORDHAM L. REV. 93 (1961) (discussing the history and application of section 2 and 2 U.S.C. § 6).

Plaintiffs maintain that the penalty provisions of section 2 and 2 U.S.C. § 6 must be triggered because the winner-take-all system for allocating electoral votes disenfranchises black voters, dilutes the votes of minorities, and denies plaintiffs an "*equally effective national vote* for the President of the United States of America." Compl. at 5, ¶ 15 (emphasis in original). They further aver that the winner-take-all system is "predicated on the majority choice of its white citizens," Compl. at 5, ¶ 13, and that "there is no legal or rational reason for the unbounded Southern states not to allocate a proportionate apportionment of the statess [sic] presidential electors based on the popular split, other than to preserve a preferential discriminate [sic] electoral choice representative of the states' majority white population." Compl. at 5, ¶ 14. These effects, plaintiffs argue, impair plaintiffs' right to vote for purposes of section 2 of the Fourteenth Amendment and 2 U.S.C § 6 and therefore require a reduction in the number of elected representatives allocated to each of the five states.[7]

---

[7] Plaintiffs also claim that the states have violated plaintiffs' First, Ninth and Tenth Amendment rights. Because they fail to support these assertions with facts, the Court declines to consider them.

Plaintiffs' dissatisfaction with the winner-take-all system is not new to the courts.[8] Most recently, in 2008, Gordon, proceeding *pro se* and without co-plaintiffs, sought to enjoin Vice President Biden from presiding over the tabulation of the electoral votes of the same five states. Gordon claimed that "in choosing from the unbounded electoral states to represent to congress the 'certificates of vote' under 'winner take all' provisions, wherein there exist no constitutional or state statutory authority allowing only the selective counting of majority polled state electoral votes,' the Vice President 'will deprive presidential electors of their constitutionally protected rights under the First and Fourteenth Amendments to the U.S. Constitution.'" *See Biden*, 606 F. Supp. 2d at 13 (quoting Gordon's complaint at ¶ 15). Without addressing the merits of Gordon's claim, the court held that Gordon lacked standing to assert his claim in federal court because he failed to show a causal connection between the alleged injury (i.e. dilution of his vote)[9] and the

---

[8] Gordon's previous actions include suits against former Vice President Richard Cheney, *Gordon v. Cheney*, No. 1:05-cv-00006 (HHK) (D.D.C. 2005) (voluntarily dismissed on grounds of mootness); the mayor of the District of Columbia, *Gordon v. Williams*, No. 1:04-cv-01904 (HHK) (D.D.C. 2005) (dismissed for plaintiff's failure to respond to show cause order); the National Archives and Records Administration, *Gordon v. Nat'l Archives and Records Administration*, No. 1:02-cv-01551 (TPJ) (D.D.C. 2003) (dismissed with prejudice for lack of standing); former Vice President Albert Gore, *Gordon v. Gore*, No. 1:00-cv-03112 (RCL) (D.D.C. 2001) (voluntarily dismissed); and former Senate majority leader Trent Lott, *Gordon v. Lott*, 1:00-cv-03087 (RCL) (D.D.C. 2000) (voluntarily dismissed).

[9] While Gordon did not explicitly allege "vote dilution" in his complaint against Vice President Biden, this Court interpreted his allegations as such. *Biden*, 606 F. Supp. 2d at 13–14 ("[Gordon's] alleged injury-in-fact is the diminishment of the votes of electors and registered voters 'by including the full slate of Presidential Electors in the electoral count of January 6th, 2009 from states subject to 2 U.S.C. § 6 [sic],' . . . and 'by the denial and/or abridgement of Presidential Electors that represent their candidate in unbound states wherein there is no state election law that explicitly allocates that states['] electors on a 'winner take all' basis.' . . . The court understands this allegation to mean that his vote as an elector and registered voter, as well as that of all other electors and registered voters, would be diluted by electoral votes from states in which electors vote for whichever candidate wins the popular vote (under so-called 'winner take all' laws) rather than voting for candidates in the proportion of

5

Vice President's ministerial acts. *See id.* at 13–14 ("Because Gordon's alleged injury is not 'fairly traceable' to the Vice President's actions, which in fact are purely ministerial, but rather is attributable to the actions of third-party states and state officials, he fails to satisfy the causation element of standing."). The D.C. Circuit Court affirmed, basing its holding on Gordon's failure to allege a cognizable injury-in-fact for purposes of standing. *Gordon v. Biden,* No. 09-5142, 2010 WL 606684, at *1 (D.C. Cir. Feb. 1, 2010). The action currently before the Court differs in only two main respects from Gordon's failed lawsuit against the Vice President: (1) *pro se* plaintiffs Tharpe, Moss, and Scott are now before the Court and (2) plaintiffs have sued a new defendant. For the reasons discussed below, these modifications do not cure the complaint's fatal defects with respect to constitutional standing.[10]

## II. ANALYSIS

Under Article III of the U.S. Constitution, federal courts have jurisdiction only over "cases" and "controversies." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Allen v. Wright*, 468 U.S. 737, 750–52 (1984). The party invoking federal jurisdiction bears the burden of showing that it has standing to sue. *Lujan*, 504 U.S. at 561. Plaintiffs meet this burden only when they demonstrate that they have suffered "(1) a 'concrete and particularized' 'injury in fact' that is (2) fairly traceable to the defendant's alleged unlawful conduct and that is (3) likely to be redressed by a favorable decision." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587,

---

votes they win.").

[10] In addition to asserting that the plaintiffs fail to establish standing, the Clerk also contends that Tharpe, in failing to respond to the Clerk's motion to dismiss, has conceded the motion. Because the Court finds that Tharpe would not have standing even if she had responded, it declines, in its discretion, *see FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997), to dismiss Tharpe's claim on this basis.

619 (2007) (quoting *Lujan*, 504 U.S. at 560–61 (1992)).[11] Because standing is essential to the Court's subject matter jurisdiction, the Court must determine whether plaintiffs have standing to sue before examining the merits of the claims they assert in the complaint. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998); *Lujan*, 504 U.S. at 560.

With respect to injury, plaintiffs contend that they have standing because Tharpe, Scott, and Moss are registered voters in two of the five states, because Gordon, as a District of Columbia voter, is suffers from an "inequality of the weight of the vote of citizen [sic] of the District of Columbia" compared to other U.S. voters. Pls.' Opp. to Def.'s Mot. to Dismiss at 26–27, and because, each of them, as members of a minority, are harmed by minority vote dilution "*in or out* of the offending states." Compl. at 6, ¶ 15 (emphasis in original). As to redressabilty, plaintiffs maintain that the Clerk could remedy these harms by declining to recognize representatives from the five states and by reducing the number of representatives apportioned to these states, as provided for in section 2 of the Fourteenth Amendment and 2 U.S.C. § 6. The Clerk counters that plaintiffs have failed to demonstrate injury, causation, and redressibility. The Court agrees and concludes that plaintiffs lack constitutional standing to assert their claims against the Clerk. The Court first addresses the standing of the plaintiffs who are voters in two of the five states before turning to Gordon's standing to sue, an issue which has already been adjudicated in similar actions.

---

[11] Because standing is a jurisdictional requirement, it must be supported "in the same way as any other matter upon which the plaintiff has the burden of proof, i.e., in the manner and with the degree of evidence required at the successive stages of the litigation." *Biden,* 606 F. Supp. 2d at 13 n.5. Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (citing *Lujan*, 504 U.S. at 56).

7

**A.    Plaintiffs Tharpe, Moss, and Scott Have Not Established Causation**

Assuming without deciding that the plaintiffs who vote in Georgia and Louisiana have established an injury-in-fact, they nonetheless lack standing to sue because they have not demonstrated that the Clerk caused the alleged injuries. The causation prong of the standing requirement is only met if plaintiffs "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct." *Allen*, 468 U.S. at 57. An allegation that their injury "results from the independent action of some third party not before the court" does not suffice. *Id.* at 757 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 25, 42 (1976)). As explained in a previous examination of Gordon's claims, "in determining whether a plaintiff has shown the 'causation' or 'traceability' element of the showing required to demonstrate standing, the court 'examines whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff.'" *Biden*, 606 F. Supp. 2d at 14 (citing *Microwave Acquisition Corp. v. FCC,* 145 F.3d 1410, 1412 (D.C. Cir. 1998) (internal citations and quotations omitted)). Here, the Court discerns no such casual link in the complaint. Plaintiffs plead no harmful acts on the part of the Clerk, an official whose acts are ministerial.[12] Instead, they allege that the five states, which are not party to this action, have disenfranchised them and diluted their votes. Without a showing that the harm they allege is

---

[12]    Established by statute and the rules of the House of Representatives, the duties of the Clerk that are relevant to this complaint include taking roll of the representatives elect, calling members to order, and presiding over the election of the Speaker of the House. *See* 2 U.S.C. § 26; House Rule II. 2(a) of the House of Representatives (111th Cong.) (readopted for the 112th Congress on January 5, 2011 as set forth in 157 Cong. Rec. at H7 (adopting H. Res. 5)). The Clerk has no power to reallocate the number of elected representatives apportioned to states, as plaintiffs seek to compel her to do. *See generally* I Hinds' Precedents of the House of Representatives Chs. II, III (1907) (describing the power and duties of the Clerk).

fairly traceable to the Clerk, the plaintiffs lack standing to sue the Clerk in this Court. *See Reaves v. U.S. Dept. of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) (holding that plaintiff voters lacked standing to sue the U.S. Department of Justice for not interposing an objection to South Carolina's change in the location of certain polling places because "it is not the allegedly unlawful conduct of the federal defendants but that of the State of South Carolina that allegedly caused injury to plaintiffs."); *Adams v. Clinton*, 90 F. Supp. 2d 27, 32–33 (D.D.C. 2000) (holding that plaintiffs suing the Senate Secretary, Sergeant of Arms, and Doorkeeper lacked standing because they failed to show that their alleged harm — denial of District of Columbia residents' right to vote for a congressional representative — was fairly traceable to the actions of the Senate defendants).

**B.     Plaintiff Gordon Has Not Pled A Cognizable Injury-In-Fact**

In this rehashed complaint, Gordon has, yet again, failed to furnish facts demonstrating an injury-in-fact. In resolving Gordon's largely identical lawsuit against Vice President Biden, the District of Columbia Circuit Court of Appeals concluded that Gordon "is not injured by the operation of the five states' winner-take-all systems because he does not vote in those states" and therefore lacked standing to sue. *See Biden*, 2010 WL 606684, at *1. No new facts alter these fatal shortcomings. Gordon remains a voter only in the District of Columbia. The allegation that he suffers injury from alleged minority vote dilution in the five states does not save his claim. For his claim to survive, Gordon must aver that *his* vote has been diluted. He does not and cannot make such an allegation in this action and therefore suffers no cognizable injury for purposes of constitutional standing. Thus, because no plaintiff has established the irreducible elements of constitutional standing, this Court lacks jurisdiction to entertain this action.

## III. CONCLUSION

For the foregoing reasons, the Court grants the Clerk's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. An appropriate order accompanies this Memorandum.

Signed on November 23, 2011 by Chief Judge Royce C. Lamberth.